UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 JAN S.,

         Plaintiff,

v.                    1:19-CV-1674
                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>MELISSA KUBIAK |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS CANNING, ESQ.<br>FRANCIS TANKARD, ESQ.<br>JEREMIAH HAYES, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

  The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 16.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, to the extent he seeks remand for further proceedings, and the Commissioner's motion is denied.

**I.      RELEVANT BACKGROUND**

    **A.      Factual Background**

Plaintiff was born in 1970. (T. 97.) He completed the 10th grade. (T. 237.) Generally, Plaintiff's alleged disability consists of herniated disc in back. (T. 236.) His alleged disability onset date is August 23, 2015. (T. 97.) His date last insured is December 31, 2018. (*Id.*) His past relevant work consists of a truck driver. (T. 237.)

    **B.      Procedural History**

On December 6, 2016, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 97.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 4, 2018, Plaintiff appeared before the ALJ, Timothy M. McGuan. (T. 31-49.) On December 12, 2018, ALJ McGuan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-30.) On October 28, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-26.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since August 23, 2015. (T. 18.) Second, the ALJ found Plaintiff had the severe impairments of: degenerative disc disease of the lumbar spine with herniation

and radiculopathy, status post trans-facet decompression with partial facetectomy and foraminotomy.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); except, he can occasionally stoop or squat; can occasionally climb stairs; and can never climb ladders or ropes.  (T. 19.)[1]  Further, the ALJ determined Plaintiff required a sit/stand option after 60 minutes of sitting.  (*Id*.)  Fifth, the ALJ determined Plaintiff unable to perform his past relevant work as a truck driver; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 24-26.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate Listing 1.04A at step three.  (Dkt. No. 9 at 17-20.)  Second, and lastly, Plaintiff argues the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Rodrigo Castro, M.D..  (*Id*. at 20-24.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 15.)

### B.     Defendant's Arguments

---

[1]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

In response, Defendant makes two arguments.  First, Defendant argues substantial evidence supported the ALJ's step three determination.  (Dkt. No. 14 at 11-13.)  Second, and lastly, Defendant argues the ALJ properly weighed Dr. Castro's opinion.  (*Id*. at 13-16.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Listing 1.04A

If an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d) [2].  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 404.1525(a), 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  It is the plaintiff's burden to "demonstrate that [her] disability [meets] all of the specified medical criteria of [a Listing]." *Otts v. Comm'r of Soc. Sec.,* 249 F. App'x. 887, 888 (2d Cir. 2007) (internal citations omitted).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan,* 493 U.S. at 530.

Listing 1.04A, is defined in relevant part as:

1.04 Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

> facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

In his step three determination, the ALJ concluded Plaintiff's impairments did not meet or equal a Listing. (T. 18-19.) The ALJ considered Listing 1.04B2b and concluded "there is no evidence of nerve root compression with the required characterizations, spinal arachnoiditis, or lumbar spinal stenosis with pseudo claudication and resulting in an inability to ambulate effectively." (T. 19.) The ALJ also concluded there was "no evidence of positive straight leg raise testing in *both* sitting and supine positions" as required under Listing 1.04A (*Id*.)

Plaintiff argues the ALJ failed to provide meaningful analysis to support his step three determination. (Dkt. No. 9 at 18-19.) Plaintiff's argument, that the ALJ's "single sentence" evaluation of Plaintiff's impairments at step three failed to provide meaningful review, fails. (*Id*. at 18.) However, Plaintiff prevails on his argument that the record contained ambiguity requiring clarification. (Id.)

In general, an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). However, even the absence of an express rationale for an ALJ's step three conclusion does not prevent a reviewing court from upholding the determination so long as the court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by

7

substantial evidence." *Berry,* 675 F.2d at 469; *see Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (an ALJ's failure to discuss a specific Listing is not *per se* remandable error, so long as the ALJ's "general conclusion" that plaintiff did not meet a Listing is supported by substantial evidence). Substantial evidence may support an ALJ's step three determination where "other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010).

Here, the ALJ specifically considered Listing 1.04 and provided specific reasoning within his step three determination to support his conclusion. (T. 18-19.) Even if the ALJ had failed to provide any rationale in his step three determination, the court could look to other portions of the ALJ's decision to find reasoning to support his determination. *Salmini,* 371 F. App'x at 112-113. Here, throughout his written decision the ALJ noted treatment records containing objective evidence pertinent to the Listing requirements. (T. 20-21.) Although the ALJ's short analysis at step three does not warrant remand, remand is nonetheless necessary.

Plaintiff argues the medical record did not indicate whether the straight leg raise tests were positive in both the sitting and supine positions, as required by the Listing, creating an ambiguity in the record the ALJ was obligated to clarify. (Dkt. No. 9 at 19.) Defendant concedes Plaintiff's lumbar impairment met the other criteria of the Listing, such as motor loss accompanied by sensory loss. (Dkt. No. 14 at 12.) Defendant further acknowledges the record contained positive straight leg raises; however, Defendant argues Plaintiff did not exhibit positive straight leg raising testing in the sitting

and supine positions for 12 continuous months, and therefore, the ALJ's determination was supported by substantial evidence.  (Dkt. No. 14 at 13.)  For the reasons outlined below, remand is necessary to resolve ambiguities in the record.

Here, there is medical evidence in the record from which the ALJ could have concluded Plaintiff satisfied the straight leg raise requirement of Listing 1.04A for the period necessary.  Defendant argues the negative straight leg testing indicate Plaintiff did not meet or equal the Listing for a continuous twelve-month period.  (Dkt. No. 14 at 12-13.)  Defendant's argument fails.

To be sure, the record contains negative straight leg raising tests.  (T. 267, 772, 1317.)[3]  On August 26, 2015, shortly after Plaintiff suffered his workplace injury, he sought emergency room treatment for back pain.  (T. 266.)  At that time a provider noted negative straight leg raises.  (T. 267.)  On December 23, 2015, Gregory Chiaramonte, M.D., performed an orthopedic independent medical evaluation and observed negative straight leg raise.  (T. 1313-1317.)  On April 18, 2017, Daniel Wild, M.D. performed an independent orthopedic examination and noted negative straight leg raise.  (T. 770-772.)  Dr. Wild's 2017 examination is at odds with every other examination performed by treating sources in 2017 which showed positive straight leg raises.  Indeed, Dr. Wild's negative straight leg raise finding is the only negative finding during 2017.  (T. 361-362, 420, 427, 434, 439, 454, 461, 468, 475.)  Further, the record indicates in 2016 all of Plaintiff's straight leg raise findings were positive.  (T. 344, 482, 488, 494, 505, 511, 523, 1253.)  The one examination performed in 2018 also contains a positive straight leg raise result.  (T. 411.)

---

[3] Both Defendant and Plaintiff cite a September 3, 2015 examination as finding a negative straight leg raise test; however, testing showed positive straight leg raise on left.  (T. 1561.)

Here, considering Plaintiff's lumbar impairment met all of the other 1.04A Listing criteria and the record contained consistently positive straight leg raising tests in 2016 and only one negative test in 2017, "the mere fact that Plaintiff's physicians did not specify whether the tests were seated or supine is insufficient information to conclude that the requirements of Listing 1.04A were not met." *Parks v. Comm'r of Soc. Sec.*, No. 1:19-CV-00505, 2020 WL 3542123, at *5 (W.D.N.Y. June 30, 2020). Although doctors did not identify whether the straight leg raising tests were supine, seated, or both, the record contained positive tests from at least June 2016 through February 2018 with only one negative result during that time. (*See* T. 413, 511, 772.)

As outlined in Plaintiff's reply, for a 14-month period between January 15, 2016 and March 15, 2017, all straight leg testing was positive. (Dkt. No. 15 at 3.) Under these circumstances, the ALJ should have investigated further or, at the very least, explained his basis for concluding Plaintiff's impairment did not medically meet or equal the Listing. *Parks,* 2020 WL 3542123, at *5; *see Ramirez Morales v. Berryhill*, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019) ("because [p]laintiff has made at least a colorable case that he meets the requirements of Listing 1.04(A), the ambiguity [of which position the straight leg raise tests were performed in] is critical to a finding of disability. Because clarification of the record is needed on this point, the Court will remand this matter for further administrative proceedings."); *but see Casillas v. Comm'r of Soc. Sec.*, No. 1:19-CV-00629, 2020 WL 4283896, at *6 (W.D.N.Y. July 27, 2020) ("Although it is unclear whether the tests were seated and supine, the tests were not consistently positive for twelve months as required to meet the Listing"). The ALJ's

10

failure to provide such an explanation precludes meaningful review and warrants remand.

### B.     Treating Source Rodrigo Castro, M.D.

Plaintiff argues the ALJ failed to properly assess the opinion of treating physician, Dr. Castro.  (Dkt. No. 9 at 20-24.)  Essentially Plaintiff argues the ALJ erred in affording more weight to a one-time examiner than a treating examiner.  (*Id*. at 21.)  And further, Plaintiff argues the ALJ's failure to incorporate Dr. Castro's opined limitations of occasional pushing, pulling, lifting, and carrying was not harmless.  (*Id*. at 23.)

Here, remand is necessary for a proper evaluation of medical evidence at step three.  On remand, should the ALJ progress past his step three analysis, a reconsideration of medical opinion evidence in subsequent steps may also be warranted; however, as outlined herein, the ALJ properly assessed Dr. Castro's opinion and any error in failing to include the doctor's limitations would be harmless.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella*,

925 F.3d at 95-96 (citation omitted); 20 C.F.R. 404.1527(c)(2).  A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Id*. at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

In general, ALJs should not rely heavily on one-time consultative examiners, as a single look at an individual's condition is not indicative of his overall health.  *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).  However, "the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."  *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016).

Dr. Castro opined Plaintiff could occasionally lift and carry ten pounds.  (T. 429.) Dr. Castro indicated Plaintiff could occasionally: sit, stand, walk, climb, kneel, bend/stoop/squat and drive a vehicle.  (T. 429-430.)  He indicated Plaintiff could frequently: grasp; perform fine manipulation; reach overhead; and reach at or below shoulder level.  (T. 429-430.)  The ALJ afforded Dr. Castro's opinion partial weight.  (T. 22.)  The ALJ acknowledged the doctor was Plaintiff's treating source; however, the ALJ noted his specialty in family medicine.  (*Id*.)  The ALJ also concluded most of the limitations provided by the doctor were consistent with the record as a whole.  (T. 22.) The ALJ concluded the doctor's opined limitations concerning Plaintiff's ability to lift, carry, push, pull, and manipulative limitations were inconsistent with the record.  (T. 22-

23.)  The ALJ noted the record failed to document significant deficits or treatment for Plaintiff's upper extremities.  (T. 23.)

Any failure to incorporate Dr. Castro's limitations in the RFC determination was harmless.  Consistent with Dr. Castro's opinion, sedentary work requires only occasional lifting and carrying of ten pounds.  20 C.F.R. §§ 404.1657(a), 416.967(a).  Further, the occupations provided by the vocational expert at the hearing would not be precluded based on Dr. Castro's additional opined limitations.  (T. 25, 44-47.)

The occupation of nut sorter requires frequent reaching, handling, fingering.  DOT 521.687-086.  Not present in the occupation of nut sorter are climbing; balancing; stooping; kneeling; crouching; and crawling.  *Id*.  The occupation of ink printer requires frequent reaching and handling; and fingering is not present.  DOT 652.685-038.  Also not present are climbing; balancing; stooping; kneeling; crouching; crawling; and feeling.  *Id*.  The occupation of label pinker requires frequent reaching; handling; and fingering.  DOT 585.685-062.  The occupation of label pinker does not require climbing; balancing; stooping; kneeling; crouching; and crawling.  *Id*.  Therefore, any error in weighing Dr. Castro's opinion or providing for additional limitations in the RFC based on his opinion, was harmless error because the doctor's opinion was consistent with the demands of sedentary work and would not preclude the occupations provided by the vocational expert at the hearing.

Because remand is necessary for a proper evaluation at step three of the sequential process, this decision should not be read to preclude the ALJ from making any additional findings at subsequent steps of the process should he find Plaintiff's impairment does not meet or equal a Listing at step three.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     April 9, 2021

William B. Mitchell Carter
U.S. Magistrate Judge